IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

v.

DANIEL PEGGS,                                                                Case No.:  20-cr-20-jdp

           Defendant.

GOVERNMENT SENTENCING MEMORANDUM

      As is often the case, the defense and the government have vastly different views of the conduct in this case.  The defendant attempts to characterize his illegal conduct as "serial philandering."  From the government's perspective, the defendant's conduct is much more sinister and serious.  As the Court is aware, the defendant pleaded to possession of an image of the minor victim in this case, but possession of child pornography doesn't accurately capture the conduct the defendant engaged in.  And while the charges against the defendant once included possession child pornography (for possessing images of young girls located on a hard drive from his residence) and sex trafficking of the minor victim of this case, those charges also didn't capture the essence of this case.  From the government's perspective, the heart of this case is the production of child pornography.

      The defendant met a minor through a personal advertisement on Craigslist.com – an ad posted by or at the behest of Bryan Ragon.  Shortly after responding to the ad –

an ad that was explicitly soliciting sex with a barely legal adult - the defendant rented a hotel room, recruited other men for group sex, and travelled to Rice Lake where he (and others invited by him) engaged in sexually explicit conduct with the 17-year-old victim while he recorded it with her iPhone. The defendant engaged in this behavior repeatedly from October 2015 through May 2016, all while the victim was under the age of 18.

It may be tempting for the Court to consider this case to be less serious than other production of child pornography cases because the victim was 17 years old. It may be appealing to diminish Peggs' conduct by comparing him to Bryan Ragon – the sexually deviant protagonist who was deservedly sentenced to 20-years' incarceration in the Western District of North Carolina for his conduct. The government urges the Court to consider the behavior Peggs engaged in – the sexual exploitation of an extremely vulnerable young woman – and the position of trust Peggs held at the time he committed his crimes and requests a sentence of ten year term of incarceration.

<u>RESPONSE TO DEFENDANT'S OBJECTIONS TO THE REVISED PSR</u>

**A. Production**

The defendant asserts that the cross-reference for production of child pornography should not apply because he "merely engaged in sexual activity and allowed it to be videotaped by [the victim] for Ragon's benefit." [Dkt. 113, p. 24]. He also states he "was made to invite other people for sex as part of Ragon's quid pro quo – Ragon would allow Peggs and other to have sex with [the victim], so long as it was videotaped for his voyeuristic desires…..before men could have sex with [the victim],

they had to either tape it or bring multiple men to the rendezvous." [Dkt. 113, p. 4].[1]

This narrative is consistent with Peggs continual shifting of blame to others for his disturbing and illegal behavior.

A sampling of evidence from Peggs' Facebook account (in the name of Jake Thompson) shows that he had a long-standing interest in group sex, and enjoyed viewing and producing images of sexual activity:[2]

- On May 21, 2015, Peggs sent          a Facebook message telling her that "a group of four of us are getting together…you and your boyfriend are welcome. Or just you." He then asks her if she is interested in trying some "group stuff."

- In a Facebook chat between Peggs and        on December 18, 2016, Peggs talked about having sex with her in the past and wanted to know if she was still into group sex. He said that he wished he still had the videos of them and of her. He said he used to masturbate to them. He then proactively stated, "I guess I could be talked into making a few more with you." She responded "talked into? Taking a video with me is a privilege." He said, "I agree."

- April 16, 2018, Peggs reached out to the victim on Facebook and asked her to go to a group sex party in Stevens Point.

Additionally,     - a woman Peggs was having sex with both individually and in group settings from September 2015 through June 2016 - was interviewed in relation to this case. She stated that she met Peggs through a Craigslist ad in September 2015. After talking online, they met in person at Cancun Mexican Grill in Eau Claire. While at the restaurant, Peggs asked her if she wanted to come back to a hotel – either the Super

---

[1] See also Defendant's filing at Dkt. 49, p. 9: "Doe always insisted that she wanted the videos for herself or Ragon." On December 2, 2015, "Doe made it clear that if Peggs was going to sleep with her, it had to be recorded."

[2] The government is not asserting that consensual sexual activity between adults is illegal or immoral. The purpose in highlighting Peggs' interest and experience in group sex and producing images of sexual activity is to rebuff his assertions that he was forced to invite other to sexual encounters with the victim, and that he was forced to record their sexual activity.

3

8 or Motel 6 – to have sex with him and some others. She stated that Peggs was "deeply involved" in swingers organizations     confirmed (as the victim had reported) that Peggs brought an Asian female to her house for group sex with her and her boyfriend.³

 reported that Peggs was "pushy" about having group sex and that she was not comfortable with it.

In looking at evidence pertaining specifically to Peggs and the victim in this case, it is clear that Peggs was not merely following mandates required by Ragon but was an eager proponent and a necessary collaborator in the group sex encounters and the production of child pornography. Even before the victim met Peggs for the first time, Ragon told her that Peggs was be more suited to arrange the group sex encounters and give the participants the rules since he had done group sex before.

Evidence recovered from various sources – including Ragon's computers and the victim's electronic devices – shows the true nature of Peggs' relationship with the victim. Instead of being "forced to" engage in group sex and recordings, Peggs was an enthusiastic participant and often took the lead in these activities. For example:

- A video titled **2015-10-23 23.19.mv4** (from October 23, 2015) captures the first meeting between Peggs and the victim, beginning the moment they met and continuing through recordings of group sex encounters at the Amerivu in Rice Lake. The video begins with the victim in a car in a parking lot, talking to Ragon. Peggs pulls in and introduces himself as Jake. Peggs and the victim drive to the Amerivu Inn in Rice Lake. As they enter a hotel room, the victim puts a camera on surface facing the bed and asks Peggs if he wants to say hi to her friend. Peggs says "How ya doing?" Peggs then begins manipulating the camera to get a better shot of the bed. The victim

---

³ Peggs claims that this encounter occurred after the victim turned 18. The victim asserts this occurred before she turned 18. J.B. reported that it occurred between November 2015 and June 2016. The victim turned 18 in May 2016.

then says, "I have a confession to make," and tells Peggs he had been communicating with Ragon and not her.  Peggs responds "That's awesome!"  Peggs then talks about other men he invited to have sex with them that night; he said he had hoped for eight but it would probably only be four.  Peggs then says "I'm not quite sure how you want to do this.  Do you want them to just file in or be ready to go?" The victim says she doesn't know what to do.  Peggs and the victim have intercourse.  During the encounter, the victim says the quality of the video might not be great; Peggs responds that he had been thinking of buying a GoPro for situations like this.  Other men enter and the victim has intercourse with them.  Forty-six minutes into the video, Peggs picks up the recording device and moves it towards the victim and a man having sex, focusing on their genitals.  He then returns the camera to where it was and joins in.  At fifty-two minutes in, Peggs picks up the recording device and records the victim performing fellatio on him.

- Another video titled "**2015-10-30 23.00.mpr**" (recorded on October 30, 2015) shows the victim and Peggs in a hotel room.  Ragon is talking directly to Peggs and asks, "How was your week?" and "Did you and [the victim] have a good fuck?"  Peggs leaves the room momentarily and Ragon tells the victim "Jake said that he'll play videographer at some point during the night [after other men show up]."  The video continues, recording individual sex between Peggs and the victim, and group sex as other men arrive.  During sexual activity Peggs takes camera and zooms in and says, "Are you there Bryan?"  He repositions camera to get better view of the sexual activity.

- A video titled "2015-11-1 09.45" is a Skype conversation between the victim and Ragon.  The victim tells Ragon how Peggs drove straight from hotel they were at to work.  Ragon asks if Jake got any good video.  The victim says she doesn't know when he was recording.

- A video titled "2015-11-11 00.39.mp4"(recorded on November 11, 2015) shows Ragon telling the victim that he "never heard back from Jake about the videos from last night."  Ragon was upset because Jake had videos of sexual encounters with the victim that he wasn't sharing.

- A search of Ragon's email showed an email on October 26, 2015,  from jakethompson4670@gmail where Peggs stated he liked "being behind the camera."

5

- A video titled "2015-12-02 20.14.26 Jake.mov" (recorded December 2, 2015) is a 33 second video showing Peggs and the victim engaged in sexual activity.  At 24 seconds into the video, the camera is directed to a mirror mounted to the wall of the hotel room.  The reflection shows Peggs holding the camera in his left hand.  Peggs continues to perform sexual intercourse on the victim while filming himself in the mirror.  Peggs then points the camera at the victim's face and breasts and then her vagina.  He continues to have sexual intercourse with her.

The victim also made several statements describing Peggs and Ragon as a full-fledged co-collaborators.  In fact, the victims communications with Ragon show that, often times, she was not aware of what Peggs and Ragon were planning – as a team - for her.

- In a video titled "2015-10-26 17.20 [victim].m4v"(recorded on October 26, 2015), the victim tells Ragon "I'm a little bit terrified at what you and Jake seem to be plotting because both of you seem to have very similar minds. And now that there's two of you working together, it's double trouble." She also says, "Hey it's really not fair that you told Jake your actual number so I can't see what you're saying."

- In a video titled "2015-10-28 21.54.mp4" (recorded October 28, 2015) the victim tells Ragon she has been talking to Jake on Text now.  Ragon says he has been talking to Jake by his cell phone.  The victim then says, "I love how you and Jake are working together on this, especially the fact that you won't fricking tell me what's going on."

- In a video titled "2015-10-29 01.39.00" (recorded October 29, 2015) the victim tells Ragon that Jake sent her a picture of a man with a very large penis and asked her if it was okay to invite him.

Peggs fallback position, since the inception of this case, has been to cast himself as an unwilling partner to the production of child pornography.  The evidence makes clear this is Peggs' attempt to deflect blame and does not reflect reality.

**B. Age**

The defendant asserts that he learned of the victim's true age at the conference in the Dells in mid-February and then stopped seeing her until after she was 18. The victims has consistently denied this assertion [See Dkt. 93-1] and the evidence contradicts his claims.

As a starting point, the victim looked very young, as noted by other men:[4]

- A video titled "2015-10-23 00.11.m4v" (recorded October 23, 2015) shows Peggs talking to the victim about other men who are supposed to show up to the hotel to have sex with her. The victim states that one of the men she had sex was thought she was "jailbait" and got scared. Peggs and the victim then have sex. Another man enters the room and asks the victim how old she is. She says that she is 19 years old.

- A video titled"2015-10-24 03.25.m4v" (recorded October 24, 2015) shows a man enter the same hotel room and ask the victim if she is in high school. The victim says yes, but states that she is graduating and that she does an internship teaching photography and videography at a charter school. She then says she is 19 years old. The man says, "your profile says you're 18 – I was going to ask you [about your age] because you look really young."

Not only did other men suspect the victim was a minor, but Peggs himself believed the victim was a minor from very early on. In a video titled "2015-10-30 23.00.mp4" (recorded on October 30, 2015), Peggs and the victim are recorded talking to Ragon. When Peggs briefly leaves the room, the victim tells Ragon, "he's accusing me of being under 18." Ragon says he didn't tell anyone anything about her age.[5]

---

[5] A video titled "2015-12-07 17.57.mp4" (recorded December 7, 2015) shows the victim and Ragon talk about her being a senior in high school.

7

Peggs claims that he learned about the victim's age when he brought her to the Wisconsin Dells on February 12-13, 2016, and asserts that he stopped their sexual relationship until after she turned 18. The victim has consistently denied this. During interviews, the victim was not always able to pinpoint dates, but she was always certain that she told Peggs she was a minor and he continued to have sex with her while she was a minor.[6]

During her first interview with the Wisconsin Department of Justice's main case agent on February 6, 2019, the victim stated that:

- There were one or two people who knew she was underage – one wa        and the other was Dan.

- She stated Peggs told her that their relationship was "really bad because I'm actually a principal."[7]

- She stated she sent him a text that said, "I'm literally in high school right now." He responded "Oh, I'm a principal at a high school and I'm at work right now." Upon further questioning, the victim stated that, when she first met Peggs she would tell him "I'm in a college class" but after she told him her age she would say "I'm literally in a high school class right now."

- She remembered a conversation at the Amerivu in Rice Lake where she told Peggs "You know I'm not really that old right?" His response was that he had already guessed that. Upon further questioning, she recollected that she told Peggs "This is how old I am, and I am going to classes in high school [and] it was actually another kink of his." While she did not remember the date she told him, she knew he continued to have sex with her after this and that she was still a minor. As the interview progressed, she remembered that she did show him her digitally altered ID when she first met him, and then later she showed him her real ID. She

---

[6] As the letter submitted by the victim's mother notes [Dkt. 101], the victim was in the emergency room on her 18th birthday after a suicide attempt. While the victim cannot put exact dates on some events, she is able to delineate things that happened before her 18th birthday and after she turned 18.

[7] Defense claims that Peggs claims that he was saying the relationship was bad because he was married. Peggs told the victim he was divorced and she did not know he was married until after she learned his real name in mid-February. Additionally, the victim reported that he specifically said it was bad because of his job.

      confirmed again that they "definitely" continued having sexual contact while she was a minor.

- She recalled a conversation with Peggs where she told him "you know I'm the age of your students right?" Peggs replied "Yeah, yeah." Victim then asked, "Does that mean you are attracted to your students?" Peggs replied "Well no – I know them more casually."

Additionally, the victim testified in grand jury that "before [the] Wisconsin Dells trip, he did tell me that he was in a school system. He said…I work around kids who are the exact same age as you." He told her he could bring her to his school and into his office and she "would fit in perfectly" and "no one would know."[8]

    Production of child pornography requires only that the person in the visual depiction was a minor at the time the image was produced. The government need not prove the defendant knew the victim's age. Additionally, a consensual relationship (and consensual picture taking) is irrelevant. *Ortiz-Gralau v. United States*, 756 F.3d 12 (1st Cir. 2014). The evidence demonstrates that the defendant is guilty of producing child pornography. Above and beyond meeting the elements for production of child pornography, evidence also demonstrates that the defendant was aware of the victim's age and, even though he knew the risks associated with his behavior, he continued exploiting her and producing images of the exploitation.

### C. Meetings

    Peggs claims that he met with the victim "sporadically" and only admits to meeting with her when the government was able to produce hotel receipts. Early on in

---

[8] Facebook communications from Peggs (through the Jake Thompson account) show that the defendant often invited women to his office afterhours for sexual rendezvous.

9

this case, the defense admitted only bare minimum contact between Peggs and the victim.[9] As the defense likely sifted through the discovery in this case and realized there were seven hotel rooms rented in Peggs' name that were incontrovertible evidence of his meetings with the victim, the defendant's stance became that the victim "met with Peggs no more than seven times during the relevant time period." [Dkt. 126, p. 4]. The victim has consistently stated that she saw Peggs "constantly" and had a "fairly constant stream of conversation [with him] from the day they met." To state that the only times Peggs and the victim met are the seven times the government produced records from hotels is disingenuous.

The victim cannot recall all of the hotels she was at, nor did she know what names hotel rooms were rented under. Additionally, evidence suggests that not all hotel rooms Peggs used were rented under his name.[10] Therefore, it was not possible for the government to discover each and every hotel record to substantiate when Peggs and the victim met. That does not mean that Peggs only met with the victim the seven times that hotel records were recovered.

In a video from November 20, 2015 – one of the dates Peggs searched for the victim by her name on Facebook – Ragon and the victim talk about her seeing Jake that

---

[9] See Docket 49, p. 11. Defense states "Peggs and Doe allegedly met again in November [but] there is little in discovery to substantiate this encounter." Discovery contains receipts for a room at the Microtel in Rice Lake in the defendant's name for November 9, 2015, and two rooms at the Amerivu in Rice Lake in the defendant's name on November 30, 2015. Therefore, it is now uncontested that Peggs met the victim these two times in November 2015 in Rice Lake.

[10] As noted earlie         was an adult female who met Peggs from a Craigslist ad. During their first meeting at a restaurant, Peggs invited       to a hotel for group sex. J.B. stated that the hotel room Peggs invited her to was under someone else's name.

night. Ragon tells the victim "Jake wants to know where he can go because he won't have a hotel room." Later conversation between Ragon and the victim confirms the victim did meet with men to have sex that night. Additionally, files titled $R8WLQGY.png and $RCXQZEH.png were recovered from the victim's phone. The case agent reported that one file was of the victim performing oral sex on a man suspected to be Peggs and the other was of a nude male standing while the nude victim had her legs wrapped around his waist. The agent reported the male's appearance was completely consistent with Peggs but his face was not visible. Peggs argues that the video cannot be him because: (1) one of the timestamps recovered from the video shows January 22, 2016[11]; (2) the victim's phone pinged to a Fairfield Inn on January 22, 2016; and (3) there is no receipt of Peggs being at the Fairfield Inn. Therefore, his logic concludes the man in the video is not Peggs. This is faulty logic. The case agent identified the male in the video "consistent in appearance" with Peggs. Even if the video was taken at a Fairfield Inn (which is not certain), the fact that the government does not have a hotel record from that hotel in the defendant's name is not proof he was not there.

According to multiple statements made by the victim, she met with Peggs individually approximately 15 times and in a group setting approximately 10 times. The absence of evidence (in the form of hotel records or other electronic data) is not proof

---

[11] The time/date stamp on this video indicates a last modified date of January 22, 2016, and a last accessed date of January 31, 2016. However, because the video was recovered from deleted space, the agent noted that these dates may not be reliable.

that additional encounters did not occur. The defendant's admission of meeting with her only seven times – a fact which he can't very well deny given the records obtained from hotels – is another example of his lack of acceptance of responsibility in this case.

## ARGUMENT

In sentencing the defendant, Title 18, United States Code, Section 3553(a) directs this Court to focus on who the defendant is and what the defendant did (Section 3553(a)(1)), and to address various societal goals in sentencing (Section 3553(a)(2-7). No doubt the defendant will stress what he has already suffered and what he will suffer – the loss of his job, his reputation, his family, and his standing in the community – in arguing for a lenient sentence. However, the Court cannot merely a focus upon the defendant's background and the impact of the sentence on the defendant; the Court must also consider the guideline recommendation, the defendant's criminal conduct, the impact on the victim, and all other factors included in the statute.

The conduct the defendant engaged in is production of child pornography. While the defendant pleaded to possession of child pornography, the guidelines recognize the seriousness of production of child pornography and direct the Court to apply those guidelines in cases like these. So, while the defendant is not subject to the fifteen-year mandatory minimum for production (or even the five-year mandatory minimum for receiving the pornographic images of the minor victim – images that requested), the guidelines do reflect the seriousness of his crime. The government believes that a ten year term of incarceration is sufficient but not greater than necessary to meet the goals of sentencing.

A. Nature and Circumstances of the Offense and History and Characteristics of the Defendant

As is obvious by the dozens of letters submitted by community members, the defendant was a man who was well-respected, even revered, in his small community. Peggs was "working as a principal, married with children, a serial philanderer …. leading a double life." [Dkt. 49, p. 10]. For years, well before meeting the victim in this case, Peggs was meeting women from the internet, engaging in extra-marital affairs, and participating in and arranging group sex. None of those things are a crime. Meeting the victim in this case – a minor with a "tragic" life [Dkt. 49, p. 5] - changed the behavior from simply unbecoming for a small-town principal to out-and-out illegal.

The defendant met the victim in this case through a Craigslist ad. Upon meeting her, he suspected she was a minor, and then he his suspicions were confirmed when the victim told him her age. His job as principal required him to ensure young people under his care were safe, but instead of nurturing and protecting his victim, he continued to sexually exploit her. The defendant – a trained educator on his way to earning his PhD – understood the vulnerabilities of youth in general, and knew the specifics of this victim's situation, and yet his continued to exploit and degrade her for his (and Bryan Ragon's) sexual pleasure. The toll this crime took on this victim is profound.

In considering a just punishment that adequately reflects the seriousness of the crime, it is important for the Court to consider the impact on this victim (and her family). Additionally, while the defendant's family and the community at large are not

13

technically victims of his crimes, there is no doubt his conduct has impacted an entire community.

  B. Respect for the Law, Just Punishment, and Adequate Deterrence

The sexual exploitation of minors is an offense that cannot be tolerated in our society. This is especially true when the exploitation is perpetrated by people in positions of power who are entrusted to care for youth. While the sexual exploitation in this case did not originate at the defendant's place of work, that does not negate the need to deter other people in similar positions from engaging in this type of conduct. The goal of deterrence is realized if even one person is deterred. In many cases, deterrence is not a major consideration for the Court due to the uncertainty of any impact resulting from a long sentence. This case is different. This is a case where the Court should send a message. People in positions of power, people who work with children, people like the defendant cannot exploit minors and claim ignorance or mistake. The law does not allow that, and the defendant's sentence should send that message out loud and clear to all professionals who are entrusted with caring for children.

Finally, there is no denying the defendant was an exceptional, inspirational, influential figure in his community. It is also clear that he was able to maintain that persona while leading another life outside the public eye. A deeper look into his background reveals that the defendant had a preoccupation, bordering on obsession, with sex. The defendant nominally addressed his issues, to appease his wife, by briefly attending Sex Addicts Anonymous and going to marriage counseling. However, the

defendant has made no true effort to cease, control, or even understand his behavior. While the government has not seen the psychosocial evaluation referenced in the PSR, even the brief bit of information contained in the PSR about this make it clear the defendant minimized his conduct. The defendant has continually shifted blame and denied taking any meaningful responsibility for his crimes, and this should be taken into consideration in devising a sentence.

## CONCLUSION

For all the foregoing reasons, the government respectfully recommends that this court sentence the defendant to ten years in prison to be followed by a lengthy term of supervised release. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing. The government further requests that, should a term of imprisonment be imposed, the defendant be taken immediately into custody following the sentencing hearing. Finally, the government will be working with defense on coming to an agreement on restitution. Should the parties not be able to come to an agreement, the government requests the Court schedule a restitution hearing.

Dated this 30th day of November 2021.

                                      Respectfully submitted,

                                      TIMOTHY M O'SHEA
                                      Acting United States Attorney

                          By:       /s/
                                      JULIE S. PFLUGER
                                      Assistant United States Attorney