```
                  UNITED STATES DISTRICT COURT

              FOR THE WESTERN DISTRICT OF WISCONSIN

  * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

  UNITED STATES OF AMERICA,

                   Plaintiff,

       vs.                           Case No. 20-CR-020-JDP

  DANIEL PEGGS,                       Madison, Wisconsin
                                      August 20, 2021
                   Defendant.         10:30 a.m.

  * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

            STENOGRAPHIC TRANSCRIPT OF PLEA HEARING
          HELD BEFORE CHIEF JUDGE JAMES D. PETERSON

  APPEARANCES:

  For the Plaintiff:
          Office of the United States Attorney
          BY: JULIE S. PFLUGER
          Assistant United States Attorney
          222 West Washington Avenue, Suite 700
          Madison, Wisconsin  53703

  For the Defendant:
          Federal Defender Services of Wisconsin, Inc.
          BY: JOSEPH A. BUGNI
              JESSICA ETTINGER
          Madison Branch Office
          22 East Mifflin Street, Suite 1000
          Madison, Wisconsin  53703

  Also Present:
          Daniel Peggs, Defendant




                  CHERYL A. SEEMAN, RMR, CRR
                    Official Court Reporter
                  United States District Court
                 120 North Henry Street, Room 410
                    Madison, Wisconsin  53703
                       1-608-261-5708
```

1          (Called to order 10:30 a.m.)

2          THE CLERK:  Case No. 20-CR-20, *United States of*

3 *America v. Daniel Peggs*, called for a plea hearing.  May

4 we have the appearances, please?

5          MS. PFLUGER:  Julie Pfluger on behalf of the

6 United States.  Good afternoon, Your Honor.

7          THE COURT:  Good morning.

8          MS. PFLUGER:  Good morning.

9          MR. BUGNI:  Good morning, Your Honor.  Joe Bugni

10 and Jessica Ettinger appear on behalf of Dan Peggs.

11          THE COURT:  All right.  Good morning to all of

12 you.  So we're here for a plea hearing that's based on a

13 written plea agreement that's been provided to the Court.

14 Let me begin by addressing the numbers of people in the

15 courtroom.

16      I've gotten a heads-up from both sides about the

17 public interest that the case has generated.  What we do

18 here in court is, for the most part, entirely public.

19 You're welcome to be here in court.  I have received many

20 letters in the case already.  I expect to receive more by

21 the time of sentencing.  Your input is welcome.  I've read

22 many of the letters already.  I assure you that by the

23 time of sentencing, I will read all of the letters that I

24 get, so your input is welcome.

25      I will get a great deal of information about this

1  case; not just the letters from the public, but I will get

2  a very comprehensive presentence report that will not

3  itself be public.  So I will have more information than

4  the public has when I decide about what sentence to impose

5  here in this case.  And that's appropriate because I get

6  to do a very deep dive into Mr. Peggs' history and some of

7  that is just not appropriate for public disclosure.

8      My job in the case, as a judge, makes me unique in

9  the number of people in the courtroom here because I have

10  to look out for the interests of everyone.  I have to look

11  out for the interests of the public, as expressed by the

12  prosecution on behalf of the United States of America.  I

13  will of course be very concerned about the public.  I

14  consider protection of the public to be my first and most

15  important job in criminal matters.

16      But there are other interests that I have to look out

17  for and not the least of them is the interest of Mr. Peggs

18  himself.  He is a citizen of the United States.  He has,

19  even if he were not a citizen of the United States, he has

20  got rights under the Constitution of the United States and

21  I also have an obligation to respect and look out for

22  those rights.

23      So that is the process that I will engage.  As I

24  said, your participation is welcomed.  What we do here in

25  the court is usually public, with the exception primarily

1  of the presentence report, which will have a vast amount

2  of information that I will have and the parties will have,

3  but the public will not have.  But your input is welcomed.

4  So if you want to communicate to me about the case and

5  about the impact of the case on you, write me a letter and

6  I will consider it.

7       We will hear directly only from the direct victims of

8  the case during any hearings.  I'll begin by addressing

9  that.  So, Ms. Pfluger, I can tell from your letter that

10 the direct victim in the case has been informed of our

11 proceedings today.  I got the letter that she wrote and I

12 don't know if she has any interest in being heard at our

13 hearing today.

14          MS. PFLUGER:  At this point she doesn't.

15 However, if she changes her mind, then I will be informed.

16          THE COURT:  All right.  Very good.  Thank you.

17 Let's begin with the plea hearing.  Mr. Bugni, have you

18 and Mr. Peggs received a copy of the information?

19          MR. BUGNI:  We have, Your Honor.

20          THE COURT:  All right.  And would you like it

21 read?

22          MR. BUGNI:  We would not, Your Honor.

23          THE COURT:  Ms. Pfluger, I'll ask you to state

24 the penalties that Mr. Peggs would face if he were

25 convicted.

1          MS. PFLUGER:  If Mr. Peggs is convicted of

2   possession of child pornography under Title 18, United

3   States Code, Section 2252(a)(4)(B), the maximum penalties

4   is ten years incarceration, a $250,000 fine, a period of

5   at least five years supervised release, up to life

6   supervised release, a $100 special assessment and an

7   appropriate order of restitution for damages to the

8   victim.

9          THE COURT:  Thank you.  Mr. Bugni, have you

10  talked with Mr. Peggs about the charges he faces, the

11  penalties that could result and whether he has any

12  defenses?

13         MR. BUGNI:  I have, Your Honor.

14         THE COURT:  Mr. Peggs, my understanding is that

15  you're prepared to enter a plea of guilty today for the

16  charge in the information.  Is that correct?

17         THE DEFENDANT:  Yes, sir.  Yes, Your Honor.

18         THE COURT:  All right.  The purpose of this

19  hearing is to make sure that you're capable of proceeding

20  today, that your plea is really a voluntary one, and that

21  you understand both the charges you face and the penalties

22  that could result.  I also have to make sure that there's

23  a factual basis for the plea, which means that there's

24  reason for me to believe that you're actually guilty and

25  that you'll admit that you committed the crime that's

1  charged.  I also need to review the rights that you would

2  give up if you choose to plead guilty.

3      So I have to ask you some questions that you will

4  have to answer under oath.  So I'll ask you to stand up,

5  raise your right hand, and the clerk is going to swear you

6  to tell the truth.

7                **DANIEL PEGGS, DEFENDANT, SWORN**

8          THE COURT:  All right.  You can have a seat.  And

9  I need to warn you that now that you've been sworn to tell

10 the truth, if you knowingly give any false answers to any

11 of my questions, you could be prosecuted for perjury.  Do

12 you understand that?

13         THE DEFENDANT:  I do.

14         THE COURT:  So my first questions are to make

15 sure that you're capable of proceeding today.  So let's

16 begin with this: Tell me how old you are and how much

17 formal education you've had.

18         THE DEFENDANT:  I'm 34 years old, Your Honor, and

19 I have a master's degree and a partial doctorate degree.

20         THE COURT:  You have signed a plea agreement that

21 was several pages long.  Were you able to read it and

22 understand it before you signed it?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  Let's find out if there's anything

25 that would interfere with your understanding or your

1    decision-making today.  Do you suffer from any physical or

2    mental illness?

3           THE DEFENDANT:  I do not, Your Honor.

4           THE COURT:  Do you take any medication?

5           THE DEFENDANT:  I do not.

6           THE COURT:  Are you addicted to drugs or alcohol?

7           THE DEFENDANT:  I am not.

8           THE COURT:  Are you under the influence of any

9    drugs or alcohol right now?

10          THE DEFENDANT:  I am not, Your Honor.

11          THE COURT:  Is there any other reason that you

12   would be unable to follow our proceedings and make a sound

13   decision about a important matter like whether to plead

14   guilty to a crime?

15          THE DEFENDANT:  No, Your Honor.

16          THE COURT:  Mr. Peggs, have you talked with

17   Mr. Bugni about the nature of the charges that you face?

18          THE DEFENDANT:  Yes, I have.

19          THE COURT:  Have you talked about the facts the

20   government thinks it could prove if the case went to

21   trial?

22          THE DEFENDANT:  Yes, I have.

23          THE COURT:  Have you talked about whether you

24   have any defenses to the charges?

25          THE DEFENDANT:  Yes, we have.

1          THE COURT:  And have you talked about the United

2   States sentencing guidelines and how those guidelines

3   might affect the sentence you could receive?

4          THE DEFENDANT:  Yes, we have.

5          THE COURT:  All right.  So tell me what you think

6   you're being charged with.

7          THE DEFENDANT:  I am being charged with

8   possession of child pornography of a 17-year-old.

9          THE COURT:  All right.  You understand if I

10  accept your plea and find you guilty, you could be subject

11  to the penalties that Ms. Pfluger went over; do you

12  understand that?

13         THE DEFENDANT:  I do.

14         THE COURT:  You understand that I could sentence

15  you to a term of incarceration of up to ten years; do you

16  understand that?

17         THE DEFENDANT:  I do.

18         THE COURT:  I could impose a fine of up to

19  $250,000.  Do you understand that?

20         THE DEFENDANT:  I do, Your Honor.

21         THE COURT:  I ask you to either pull the

22  microphone over or speak up just a little bit.

23         THE DEFENDANT:  I do, Your Honor.

24         THE COURT:  All right.  And I will have to impose

25  the mandatory $100 criminal assessment penalty.  Do you

1  understand?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Restitution, if it is requested by

4  the victim, will also be part of the order that I will

5  make in this case.  And you understand that I will order

6  you to pay restitution?  That will be part of the judgment

7  in this case.  Do you understand that?

8          THE DEFENDANT:  I do, Your Honor.

9          THE COURT:  And any period of incarceration would

10 have to be followed by a period of supervised release

11 that's at least five years and could be the rest of your

12 life.  Do you understand that?

13         THE DEFENDANT:  I do.

14         THE COURT:  Do you know how supervised release

15 works?

16         THE DEFENDANT:  I do.

17         THE COURT:  So you understand that I would impose

18 certain conditions and restrictions on you.  You'd have to

19 report in regularly to a supervising officer.  And if you

20 were to violate any of the conditions or restrictions, I

21 could revoke your supervised release and send you back to

22 prison for violating the conditions.  Do you understand

23 that?

24         THE DEFENDANT:  I do.

25         THE COURT:  Let's talk about the Federal

1  Sentencing Guidelines.  So as I mentioned at the beginning

2  of the hearing, the probation office will prepare a

3  presentence report that will include much of the

4  information that I will use in determining your sentence,

5  that and what I hear at your sentencing hearing.  And one

6  of the things that that report will do will be to

7  calculate the sentencing range that's recommended under

8  the United States sentencing guidelines and I want to make

9  a few points about how that guideline range is calculated.

10       So the starting point will be the offense level that

11  the guidelines assign to the crime that you're thinking

12  about pleading guilty to.  Do you understand that that's

13  the starting point?

14            THE DEFENDANT:  Yes, I do.

15            THE COURT:  I need to make sure that you

16  understand that in considering the guideline range, we're

17  not limited just to the information in the information

18  that you're pleading guilty to, but we could look more

19  broadly at your criminal conduct and consider more broadly

20  what your crime was and how it was committed.  Do you

21  understand that we're not limited just to the indictment,

22  but we'll consider what we call relevant conduct?

23            THE DEFENDANT:  I do, yes.

24            THE COURT:  All right.  And so the fact that

25  you've accepted responsibility by agreeing to plead

1    guilty, that would be a factor that counts in your favor

2    under the guideline system.  Do you understand that?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  I want to make sure you understand

5    that the general perspective of the guidelines is to

6    consider a broad range of factors about you and your

7    background and your crime and how it was committed.  Do

8    you understand it's designed to consider a broad range of

9    factors?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Let's talk about the process a little

12   bit.  So the presentence report will be prepared in draft

13   form.  You will get a copy to review with your lawyers,

14   the government will get a copy and I'll get a copy.  And

15   both sides then have the opportunity to object to the

16   report if they think there's something incorrect in the

17   report or something important has been left out or if the

18   guidelines aren't calculated right.  So you understand

19   that you have the right to object to the report?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  Okay.  And so that means that you

22   should make sure you review the report carefully and go

23   over it with your lawyers.  Will you do that?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  All right.  Then at your sentencing

1  hearing, or perhaps before if there are complicated issues

2  that are raised by the objections, I will rule on the

3  objections and make a final decision about what should go

4  in your report and what should be the correctly-calculated

5  guideline -- what the correctly calculated guideline range

6  should be.  So do you understand that process?

7          THE DEFENDANT:  I do, Your Honor.

8          THE COURT:  Here's the most important thing to

9  take away from our discussion of the guidelines: they're

10  advisory.  I will consider them, but I don't have to

11  follow them.  I can sentence you above the guideline range

12  or below the guideline range if that's what I think is

13  appropriate after I consider everything the law tells me I

14  should consider.  Do you understand that the guidelines

15  are only advisory?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  By pleading guilty today, you will

18  give up some constitutional rights that you have as a

19  person who's been accused of a crime.  I want to review

20  some of those rights with you.

21      First of all, let's talk about the information.  You

22  understand that under the Constitution of the United

23  States, you have a right to require that the government

24  get an indictment against you before they can prosecute

25  you for a crime?

1              THE DEFENDANT:  Yes.

2              THE COURT:  And you know that the indictment has

3    to be presented to the grand jury?  The grand jury has 23

4    members on it.  They're drawn from this judicial district.

5    There has to be 16 members of the grand jury present to

6    conduct any business.  And an indictment can't be returned

7    unless 12 people, that's a majority of the grand jury,

8    vote that there is probable cause to believe a crime has

9    been committed and that you're the person who committed

10   it.  You understand what it takes to get an indictment?

11             THE DEFENDANT:  I do, Your Honor.

12             THE COURT:  The information, that is just a

13   written statement of the charges against you that has not

14   been presented to the grand jury.  Are you willing to

15   waive your right to have the government secure an

16   indictment against you and proceed on the basis of the

17   information, which is just a written statement of the

18   charges?

19             THE DEFENDANT:  I am.

20             THE COURT:  All right.  I have the waiver of

21   indictment form.  It looks like it's got Mr. Bugni's

22   signature and yours.  Is that correct?

23             THE DEFENDANT:  That's correct, Your Honor.

24             THE COURT:  Okay.  I will sign that agreement and

25   enter it and we'll proceed on the basis of the

14

1   information.

2          MS. PFLUGER:  Your Honor, I believe one has

3   already been entered on the docket, Mr. Bugni and I were

4   discussing that, but you can check on that.

5          THE COURT:  I did see it on the docket, but I

6   haven't signed it.  So I'll sign this one and then we'll

7   enter that on the docket.

8       By pleading guilty today, you will give up your right

9   to proceed to a jury trial.  So do you understand you have

10  the right to go to a jury trial and have the jury decide

11  if you're guilty?

12         THE DEFENDANT:  Yes.

13         THE COURT:  And you understand that you could be

14  convicted only if all 12 members of the jury unanimously

15  agreed that the government had proved you guilty beyond a

16  reasonable doubt; do you understand that?

17         THE DEFENDANT:  I do, Your Honor.

18         THE COURT:  And you and your lawyers would be

19  able to help select the people who would serve on that

20  jury.  Do you understand that?

21         THE DEFENDANT:  I do, Your Honor.

22         THE COURT:  Under the Constitution of the United

23  States, no one can be forced to admit that they have

24  committed a crime.  That means you do not have to plead

25  guilty.  You have a right to stick with a plea of not

1  guilty.  Do you understand that?

2          THE DEFENDANT:  I do.

3          THE COURT:  And if the case went to trial, it

4  would also mean that you would not have to testify or say

5  anything and I would tell the jury that they couldn't hold

6  that against you in any way.  Do you understand that?

7          THE DEFENDANT:  I do, Your Honor.

8          THE COURT:  You wouldn't have to testify.  But if

9  you wanted to testify, you would have that right.  Do you

10  understand you'd have the right to testify if you wanted

11  to?

12          THE DEFENDANT:  I do, Your Honor.

13          THE COURT:  You would also have the right to do

14  what we call confront and cross-examine the government's

15  witnesses.  That means you could confront the witnesses by

16  facing them in the courtroom; you could cross-examine them

17  by having your lawyers ask them questions.  Do you

18  understand you'd have those rights?

19          THE DEFENDANT:  I do, Your Honor.

20          THE COURT:  You'd also have the right to call

21  your own witnesses.  And even if those witnesses didn't

22  want to come to testify, you could compel their appearance

23  to testify by using a subpoena.  Do you understand you'd

24  have that right?

25          THE DEFENDANT:  I do, Your Honor.

16

 1          THE COURT:  A felony offense also affects your

 2  civil rights outside the scope of this proceeding and I

 3  want to review some of the ways that will happen.  First

 4  of all, under Wisconsin law, once you've been convicted of

 5  a felony and when you're on any form of supervision, you

 6  would not have the right to vote, the right to hold public

 7  office or the right to serve on a jury.  Do you understand

 8  that?

 9          THE DEFENDANT:  I do, Your Honor.

10          THE COURT:  And once you've been convicted of a

11  felony, you're permanently deprived of the right to

12  possess any kind of firearm or ammunition for a firearm.

13  And if you did possess a firearm or ammunition for one,

14  you could be charged with a new crime for that.  Do you

15  understand that?

16          THE DEFENDANT:  I do.

17          THE COURT:  If you were not a United States

18  citizen, a felony conviction could affect your residency

19  or your immigration status and could result in

20  immigration-related penalties, including deportation from

21  the United States.  Do you understand that?

22          THE DEFENDANT:  I do.

23          THE COURT:  Last point about your rights is this:

24  You've got the right to an attorney through all phases of

25  this proceeding and that includes an attorney appointed at

1  government expense if you can't afford one.  Do you

2  understand you've got the right to counsel?

3          THE DEFENDANT:  I do, Your Honor.

4          THE COURT:  All right.  Our next task is to

5  review the plea agreement and I will spend a minute

6  looking at that.  So the plea agreement is in the form of

7  a letter.  It's dated July 12, '21.  It's in the form of a

8  letter from the United States to Mr. Bugni.  And at the

9  end of it, there is your name and a space for your

10 signature.  And it looks like you signed this plea

11 agreement on July 12.  Is that right, did you sign the

12 plea agreement?

13         THE DEFENDANT:  That's correct, Your Honor.

14         THE COURT:  And does this letter reflect your

15 agreement; does it contain your agreement with the

16 government about your plea?

17         THE DEFENDANT:  It does.

18         THE COURT:  Mr. Bugni, same question: Is this

19 your agreement with the government about your client's

20 plea?

21         MR. BUGNI:  It is, Your Honor.

22         THE COURT:  And, Ms. Pfluger, same question: Is

23 this the government's agreement with Mr. Peggs about his

24 plea?

25         MS. PFLUGER:  It is.

1          THE COURT:  All right.  Mr. Peggs, did anyone

2   make any other promises to get you to plead guilty?

3          THE DEFENDANT:  They have not, Your Honor.

4          THE COURT:  Did anyone threaten you or try to

5   force you to plead guilty?

6          THE DEFENDANT:  No, Your Honor.

7          THE COURT:  Did anyone tell you that you'll get

8   some particular sentence in this case?

9          THE DEFENDANT:  No, Your Honor.

10          THE COURT:  You understand that the sentencing

11   decision will be up to me?  And I'll consider the

12   guidelines, I'll consider any arguments that either side

13   makes, but I don't have to follow any of those things.

14   And if I choose not to follow them, that would not give

15   you a basis to withdraw your guilty plea.  Do you

16   understand that?

17          THE DEFENDANT:  I do, Your Honor.

18          THE COURT:  All right.  Our next task then is to

19   determine whether there's a factual basis for the plea.

20   As I said, that means there's reason for me to believe

21   that you're really guilty, that you will admit that you

22   committed the crime.  So I'll ask Ms. Pfluger to tell me

23   what she thinks the government would be prepared to prove

24   if the case went to trial.  When she's done, I'll come

25   back to both you and your attorney and ask you to confirm

1  that you agree that the government can prove those things.

2  Ms. Pfluger, go ahead.

3          MS. PFLUGER:  Your Honor, would it be acceptable

4  to the Court if I just highlighted one or two things from

5  the plea agreement that the Court didn't touch on, just so

6  we --

7          THE COURT:  By all means, yes.

8          MS. PFLUGER:  I just would like to highlight

9  paragraph 5 says that the government will dismiss the

10  pending indictment at the time of sentencing.  But through

11  this plea agreement, Mr. Peggs knowingly and voluntarily

12  waives all of his rights to appeal any conviction and

13  sentence of ten years or less, which basically means any

14  conviction and sentence because he will get ten years or

15  less.

16          THE COURT:  Yes.  And I appreciate your raising

17  that.

18          MS. PFLUGER:  So he is waiving his right to

19  appeal.

20          THE COURT:  Okay.

21          MS. PFLUGER:  I also just wanted to point out

22  paragraph 8, which says that the parties agree that there

23  are two videos that are videos of the known victim and

24  that they are the known victim engaged in sexually

25  explicit conduct.  The reason that that is in there, as

1  Mr. Bugni has flagged in his letter yesterday, we were

2  varied (ph.) it was going to be a guidelines issue in this

3  case.   The government believes that Mr. Peggs actually did

4  produce child pornography and, therefore, his guidelines

5  will be a lot higher.  Mr. Bugni and Mr. Peggs disagree

6  with that.   But that's why this sentence is in there that

7  we agreed these images are child pornography.

8            THE COURT:  Okay.  And let me get Mr. Peggs to

9  confirm that he understands and agrees with that.  So,

10  first of all, you understand that ordinarily after a

11  criminal conviction you have certain rights to appeal your

12  conviction to the Court of Appeals or you have the right

13  to appeal your sentence to the Court of Appeals if you

14  think they're unlawful in any way; do you understand?

15            THE DEFENDANT:  I do.

16            THE COURT:  And in this agreement you're agreeing

17  that you will waive your right to appeal and you will

18  accept your conviction and your sentence as long as it's

19  less than ten years.  Do you understand that?

20            THE DEFENDANT:  I do understand, yes, Your Honor.

21            THE COURT:  And also, in paragraph 8, you're

22  agreeing that those two files that are identified there in

23  paragraph 8 -- I won't read the whole file names, but

24  there are two file names that are identified -- you agree

25  that those are images of Known Victim No. 1 and do you

1  know who that refers to?

2          THE DEFENDANT:  I do, Your Honor.

3          THE COURT:  And you agree that those are images

4  of Known Victim No. 1?

5          THE DEFENDANT:  Yes.

6          THE COURT:  You agree that she was a minor at the

7  time those images were made?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  And you agree that in those images,

10  she is involved in sexually explicit conduct?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Okay.  And have you discussed with

13  your attorney what the definition of "sexually explicit

14  conduct" is?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  And you agree that the behavior

17  depicted in those images constitutes sexually explicit

18  conduct?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  All right.  Thank you, Ms. Pfluger.

21  Okay.  Now for the factual basis.

22          MS. PFLUGER:  Mr. Peggs is pleading guilty to

23  possession of child pornography, so my factual basis will

24  be just regarding that charge.  If this case went to

25  trial, the government would show that the known victim in

1   this case was born in May of 1998.  Then the government

2   would prove, through testimony of agents and through

3   Facebook records, that in 2013 Dan Peggs created a false

4   Facebook profile under the name Jake Thompson.

5       The government would prove through witness testimony,

6   including Bryan Ragon and law enforcement, that in

7   September of 2015, Bryan Ragon met the known victim at a

8   resonance fair in Minneapolis.  After the festival, Bryan

9   Ragon returned to North Carolina and the known victim

10  returned to Wisconsin.  The government would prove that

11  Bryan Ragon has pled guilty to charges pertaining to the

12  known victim and is awaiting sentencing in North Carolina

13  for related charges.

14      The government would prove through witness testimony

15  and through chats that were retrieved from the known

16  victim's phone and hard drives that in October 2015, Dan

17  Peggs met the known victim from a Craigslist ad which was

18  placed by Bryan Ragon.  Dan Peggs began communicating with

19  Ragon and the known victim under his persona "Jake."  His

20  communication with the known victim and with Bryan Ragon

21  was primarily about having sex with the known victim and

22  participating in group sex with the known victim and other

23  adult men.

24      The government would prove that in October, November

25  and December 2015, Dan Peggs rented hotel rooms in Rice

1  Lake and Eau Claire, Wisconsin, the government would show

2  the hotel records, and he met the known victim there.  At

3  times he met her alone and at times he met her with other

4  adult men and engaged in sexual activity.  Some of these

5  encounters were recorded and some of them Bryan Ragon

6  watched through live streaming on the internet.

7       The government would then prove, and this is

8  pertaining to the image that was possessed, that on or

9  about January 20, 2016, the following chat occurred

10 between Daniel Peggs and the known victim and the

11 government would display this chat.  The known victim sent

12 a selfie to Daniel Peggs.  It was her in her high school

13 bathroom.  Her shirt was off of her shoulder a little bit

14 and she was otherwise fully dressed.

15      Dan Peggs responded: "Mmmmm you dirty girl.  I'm so

16 hard.  I want more."

17      The known victim then stated: "You want more?  Or you

18 demand more?"

19      Dan Peggs said: "I do.  Now."

20      The known victim then sent Daniel Peggs a picture of

21 herself tied up with black restraints, nude, on a bed.

22 Her legs were spread.  Her vagina was clearly displayed in

23 this image.  And the image is titled the image that is in

24 the information that is a string of characters.  The

25 government would prove Daniel Peggs received and possessed

1 | this image, by his response.  His response to getting that

2 | image was: "Ugh that little pussy is so sweet."

3 | The known victim learned of Jake's true identity when

4 | Daniel Peggs brought her to a work conference in the

5 | Wisconsin Dells and other people who worked with him

6 | called him "Dan" or "Mr. Peggs."

7 | At the time the image was produced, the known victim

8 | was under 18; she was 17.  This image was transported to

9 | Dan Peggs by the internet.  And all of this occurred in

10 | the Western District of Wisconsin, Eau Claire and Rice

11 | Lake.

12 | THE COURT:  All right.  Mr. Bugni, can the

13 | government prove those things?

14 | MR. BUGNI:  They can, Your Honor.

15 | THE COURT:  Mr. Peggs, same question: Can the

16 | government prove those things?

17 | THE DEFENDANT:  They can, Your Honor.

18 | THE COURT:  All right.  And so let me just be

19 | clear about a few things.  So you did receive this image

20 | of the known victim that was, I'll refer to it as, the

21 | picture in which the victim was tied up; is that correct?

22 | THE DEFENDANT:  It is, Your Honor.

23 | THE COURT:  Okay.  And her genital area is

24 | clearly exposed and displayed in that image; is that

25 | correct?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Had you spent time with the known

3   victim before she sent that photograph?

4          THE DEFENDANT:  I had, Your Honor.

5          THE COURT:  All right.  Did you know that she was

6   17 years old at the time?

7          THE DEFENDANT:  At the time of the image?

8          THE COURT:  Yes.

9          THE DEFENDANT:  I did not, Your Honor.

10          THE COURT:  Okay.  But prior to receiving that

11   image, you had spent a reasonable amount of time with her

12   in person?

13          THE DEFENDANT:  Some time, yes, sir.

14          THE COURT:  Okay.  All right.  Ms. Pfluger, is

15   there anything else you think I need to review?

16          MS. PFLUGER:  Your Honor, knowledge of age isn't

17   necessary here.  And I would just like to say that the

18   known victim disputes what Mr. Peggs just said.

19          THE COURT:  I did receive that letter, but it's

20   not an element.

21          MS. PFLUGER:  It's not an element, but I just

22   wanted to make clear that the known victim -- her

23   statement is that he did clearly know her age.

24          THE COURT:  I understand that.  But as for the

25   element of the charge, all we need to establish is that he

1  had a reasonable opportunity to observe her; is that

2  correct?

3          MS. PFLUGER:  No.  That's for sex trafficking.

4  For this --

5          THE COURT:  No knowledge is required whatsoever?

6          MR. BUGNI:  No, it is.  Sorry.  I'm just going to

7  save your record.  You do need to know -- he does have to

8  know that it was of a minor.  That's *X-Citement Video*, a

9  Supreme Court case.  If I can just clarify, Your Honor?

10          THE COURT:  Yeah.  Go ahead.

11          MR. BUGNI:  So we know it's disputed.  But if you

12  look at paragraph 3 of the recently-filed letter, it's at

13  the casino, which happens in the Wisconsin Dells, that he

14  learns her age, right?  And Mr. Peggs keeps that image

15  that he received when he didn't know her age, long after

16  he learned her age.

17          THE COURT:  Yeah.  Okay.  So let's clarify that

18  then.  Mr. Peggs, you knew that she was 17, you continued

19  to possess the image after you knew that she was 17 years

20  old; is that correct?

21          THE DEFENDANT:  That's correct, Your Honor.

22          THE COURT:  All right.  Ms. Pfluger, do you agree

23  that covers that element?

24          MS. PFLUGER:  I agree it covers the element.  And

25  again the victim still disputes that when --

1          THE COURT:  I understand that.

2          MR. BUGNI:  Sorry, one other thing you need.

3          THE COURT:  But we need to establish the

4  admission that if he's going to plea, he has to admit all

5  of the elements of the crime.  So he admits the knowledge

6  during the time that he possessed it, not when he received

7  it?

8          MR. BUGNI:  Correct.  And the device that he

9  possessed it on, Mr. Peggs, was a what?

10          THE DEFENDANT:  It was an iPod.

11          MR. BUGNI:  And that iPod was not made in

12  Wisconsin?

13          MS. PFLUGER:  I established that by -- we didn't

14  charge that it was possessed on that device.  We charged

15  that it was transported by the internet, so that covers

16  the interstate element.

17          THE COURT:  All right.  You agree that you

18  received the image through the internet?

19          THE DEFENDANT:  I do.

20          THE COURT:  Okay.

21          THE DEFENDANT:  Yeah.

22          THE COURT:  All right.  Let me just check in.

23  Ms. Pfluger, are you satisfied that we have covered the

24  factual elements of the crime in the factual basis?

25          MS. PFLUGER:  Yes.

1           THE COURT:  And, Mr. Bugni, are you?

2           MR. BUGNI:  I am, Your Honor.

3           THE COURT:  All right.  Then I will ask you,

4   Mr. Peggs, what is your plea to Count 1 of the

5   information?

6           THE DEFENDANT:  Guilty, Your Honor.

7           THE COURT:  All right.  On the basis of this

8   discussion with you and with your attorney and on the

9   basis of the record of the case as a whole, I'm satisfied

10  that you have entered a plea of guilty knowingly and

11  voluntarily, that you did so after having an adequate

12  opportunity to consult with your attorney, that you

13  understand both the nature of the charge and the

14  consequences of a plea of guilty.  I'm also satisfied that

15  there's a factual basis for the plea.

16      Accordingly, I find you guilty of the charge

17  contained in the information.  I will accept the plea

18  agreement only conditionally pending my review of the

19  presentence report.

20      I will also note, just for the people who are here,

21  some of the letters made comments about the plea

22  agreement.  But my role, as the judge, is to approve the

23  plea agreement.  But the reasons that I can disapprove the

24  plea agreement are really quite limited.  Most of the

25  charging decisions are for the United States Government,

1  the prosecutor's office.  And so I have limited authority

2  to reject the plea agreement, but I will accept it only

3  conditionally pending review of the presentence report.

4       All right.  So we've got some scheduling matters to

5  attend to.  I have received information that, because of

6  the bulk of the discovery in the case, Mariah Stieve, the

7  probation officer, has asked for some additional time to

8  prepare the presentence report and she proposes that the

9  presence report would be available in October.  I'm going

10  to adjust this a little bit because I don't want to have

11  the sentencing on the Wednesday before Thanksgiving, so

12  I'm moving it back a day.

13       So I'm going to propose that we have the presentence

14  report available on October 21st.  That would make your

15  objections to the presentence report due on November 4th.

16  And then the sentencing hearing would be on 11/23, which

17  is the Tuesday before Thanksgiving, and I would propose

18  that we do it at 1 p.m. in the afternoon.  Let's find out

19  if that schedule works.  We'll start with Mr. Bugni.  Does

20  that work for the defense?

21            MR. BUGNI:  Yes, Your Honor.

22            THE COURT:  And, Ms. Pfluger, does that work for

23  the government?

24            MS. PFLUGER:  It actually doesn't, Your Honor.

25  I'm sorry.  I'm out that week.

30

```
 1              THE COURT:  That's all right.

 2              MS. PFLUGER:  I could do it the week after or the

 3  week before.

 4              THE COURT:  Let's take a look.  Mr. Bugni, does

 5  the week before -- I'd rather move it up rather than --

 6  we're already taking a little bit more than normal time

 7  with it.  So how about --

 8              MR. BUGNI:  Sorry.

 9              THE COURT:  Go ahead.

10              MR. BUGNI:  I may be in trial -- like, I mean,

11  nobody ever knows -- but so if we could do it towards the

12  end of the week of that --

13              THE COURT:  I'm looking at that.  I have many

14  cases on my calendar then.  So why don't we do it -- let's

15  do it Friday afternoon at, let's say, 1:30 p.m.

16         And let's see.  Let's back up the presentence report

17  just a tiny bit then, too.  Let's go with 10/15, October

18  15th, for the presentence report and October 29th for

19  objections.  And then the sentencing, we'll look at --

20  that would be the 19th, October 19th at 1 -- I'm sorry,

21  November 19th at 1:30 p.m.  Does that work, Mr. Bugni?

22              MR. BUGNI:  Yes, Your Honor.

23              THE COURT:  Ms. Pfluger?

24              MS. PFLUGER:  Yes, Your Honor.

25              THE COURT:  All right.  That's it.  So October
```

1  15th for the report, October 29th for the objections, and

2  then November 19th, 1:30 p.m., for the sentencing hearing.

3  That's that Friday of the previous week for the short

4  Thanksgiving week.

5       Let's talk a little bit.  Both of you know that my

6  normal procedures require sentencing materials two

7  business days in advance.  You've already given me a

8  heads-up that we have some guideline issues to present.

9  So do you need my guidance on when to present those?  I

10 assume you want a prehearing ruling on them.

11          MS. PFLUGER:  Yes.

12          MR. BUGNI:  Yeah.  Sorry, Your Honor.  I imagine

13 that we could submit a brief with the original objections,

14 lay out our position.

15          THE COURT:  Okay.

16          MR. BUGNI:  And then, you know, I think maybe, as

17 you did in *Kruchten*, probably the Monday for the

18 sentencing memos.  It's going to be a voluminous amount of

19 material.  I could do the week prior, depending when the

20 trial is.

21          THE COURT:  Yeah, let's do that.  So do you need

22 to respond to each other's objections?  Should we -- it

23 might make sense.

24          MR. BUGNI:  She knows what my objections are.

25 Yeah.

32

1              THE COURT:  Good.  Do it at the same time then.

2              MR. BUGNI:  Okay.

3              THE COURT:  And if you feel compelled to respond,

4    do it right away --

5              MR. BUGNI:  Got it.

6              THE COURT:  -- like the next day or two days

7    later.  So I'll just look at your objections, that's the

8    format where you present the guideline issues, and then I

9    will get you a ruling within that week and then we'll be

10   prepared to go for the sentencing.

11       And so I'm getting -- I kind of feel like Mr. Bugni

12   tells me he's going to give me one of his usual voluminous

13   sentencing memorandum, which is fine.  It's an important

14   case.  But if that's the case, I would like a little bit

15   more time.  So can I have your materials, did you say, the

16   week before?

17             MR. BUGNI:  I would prefer this, yeah.

18             THE COURT:  Okay.

19             MR. BUGNI:  I could do it two weeks, if you want.

20             THE COURT:  Now you're really worrying me.  What

21   do you have in mind?

22             MR. BUGNI:  Your Honor, this is 250,000 pages of

23   discovery.

24             THE COURT:  Yeah, but I'm not going to -- you

25   just have to summarize it for me.  I'm not doing a deep

1   dive in it.

2           MR. BUGNI:  It's going to be short.  It's going

3   to be -- I mean, I'm not going to waste your time.  But I

4   could do it a week, you know, whatever you need.

5           THE COURT:  Let's say a week in advance, so

6   November 12th.  Get your presentence materials in by

7   November 12th.

8       And for those of you who want to write letters --

9   many of you may have already written letters, so that's

10  fine, we've already got them in the books -- but if

11  anybody wants to write letters, please do that early,

12  because I've got a lot of letters to review, so November

13  12th for letters as well.  And of course members of the

14  public may not be here, so I will -- if I get letters even

15  up to the last minute, I will do everything I can to read

16  them.

17      So anything else we need to address?  Mr. Peggs --

18  the probation office has no objection to continuing

19  Mr. Peggs' release on the current conditions.  Does the

20  government want to be heard on that?

21          MS. PFLUGER:  No thank you.

22          THE COURT:  Okay.  Very good.  We'll continue.

23  Mr. Peggs, you're no longer presumed innocent, you stand

24  convicted, and so I will be particularly strict on the

25  conditions.  I haven't heard any trouble yet, but I want

1   you to know that those conditions will be strictly

2   enforced.

3       All right.  Thank you all.  We'll see you in a few

4   months.

5       (Adjourned at 11:03 a.m.)

6                                   ***

7           I, CHERYL A. SEEMAN, Certified Realtime and Merit

8   Reporter, in and for the State of Wisconsin, certify that

9   the foregoing is a true and accurate record of the

10  proceedings held on the 20th day of August, 2021, before

11  the Honorable James D. Peterson, Chief Judge of the

12  Western District of Wisconsin, in my presence and reduced

13  to writing in accordance with my stenographic notes made

14  at said time and place.

15  Dated this 30th day of November, 2021.

16

17                    _____/s/_____

18                    Cheryl A. Seeman, RMR, CRR
                      Federal Court Reporter
19

20

21

22

23
    The foregoing certification of this transcript does not
24  apply to any reproduction of the same by any means unless
    under the direct control and/or direction of the
25  certifying reporter.