IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

                    Plaintiff,

v.                                                ORDER ON RESTITUTION

DANIEL PEGGS,                             20-cr-20-jdp

                    Defendant.

---

Daniel Peggs pleaded guilty to one count of possession of child pornography based on a single sexually explicit image of the 17-year-old victim. But that image was just a souvenir of the long-term sexual exploitation and degradation of the victim by Peggs and others, particularly a defendant prosecuted in North Carolina, Bryan Ragon. Peggs was sentenced to eight years' incarceration to be followed by ten years of supervised release. The government now seeks restitution for the victim in the amount of $249,387.93, mostly for treatment and therapy for the next twenty years.

Fixing restitution in child pornography cases is complicated because the harm to the victim, while typically quite substantial, is both difficult to quantify and difficult to tie to the actions of the defendant. Congress attempted to address these difficulties with the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, but that law is inapplicable to this case, which involves an offense committed in 2016. Restitution is thus governed by the statutory framework of 2016, which was addressed by the Supreme Court in *Paroline v. United States*, 572 U.S. 434 (2014).

The parties agree that, under this framework, the victim is entitled to restitution for losses proximately caused by the conduct for which the defendant was convicted. The parties

also agree that past and future medical care and therapy are among the categories of losses covered by the 2016 version of 18 U.S.C. § 2259. The primary points of contention are whether the victim's future treatment expenses have been reliably quantified and whether the full amount of those future expenses can be fairly attributed to the offense of conviction.

The government's quantification of future expenses is based on the victim's mother's research into the average per-session cost of psychiatric care and therapy, projected out based on monthly psychiatric sessions and biweekly therapy sessions. Dkt. 182-3. The average per-session cost is less than the actual per-session cost from the victim's current provider. Peggs doesn't challenge the per-session cost estimates; those are good enough for present purposes, which require the government to establish restitution to a preponderance of the evidence. 18 U.S.C. § 3664(e). But, as Peggs points out, the government provides no evidence to support the assumption that the victim will need therapy for 20 years or that the sessions must be monthly for psychiatric care and biweekly for therapy. I cannot find that the government has established by a preponderance of the evidence that the victim will suffer losses in the amount of $249,387.93.

The government has also done little to show that the victim's losses were caused by the offense of conviction. In its reply, the government argues that the court should look beyond "the mere elements of the underlying conviction," and consider "the conduct of the particular defendant from whom restitution is sought." Dkt. 193, at 2. The government argues that I should consider Peggs's sexual exploitation of the victim because that is how he came to possess the sexually explicit image for which he was convicted. *Id*. at 3. But this an invitation to award restitution on the basis of Peggs's relevant conduct, an approach prohibited under *Hughey v. United States*, 495 U.S. 411 (1990).

2

The court now faces a situation similar to that in *Paroline*: the victim has suffered immensely, but the government has provided no reliable way to fix the losses attributable to the offense of conviction. Following the instruction of *Paroline*, the court must "assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses." 572 U.S. at 459. The *Paroline* Court suggested some factors to consider, although those were mostly tailored to the facts of that case, which involved the widespread and on-going distribution of images of child pornography. The facts of this case are quite different, because the victim herself sent Peggs the image, and there is no evidence that this particular image was distributed to anyone else. Following the general conceptual approach of *Paroline*, the court's task is to estimate an amount of restitution that fits the offense committed by the defendant.

The government offered in its original motion to provide further testimony to support the requested restitution, Dkt. 182, at 8–9, but it didn't reiterate that request in its reply, Dkt. 193. The government has had a full opportunity to present its evidence in writing. And the government isn't very specific about what additional evidence it would present, or how it would be helpful on the main points of controversy. The quest for a more accurate or better supported estimate of future treatment cost would not be worth the effort. For his part, Peggs complains that the probation office should have reviewed the restitution documentation. But Peggs doesn't explain how the expertise of the probation office would help, given that the parties have had the opportunity to present their restitution evidence and arguments directly to me. I conclude that I have all the evidence that would likely be helpful. Following *Paroline*, I will do the best I can with what I have.

I heard the victim's testimony at the sentencing hearing and read her mother's written statement describing the victim's suicide attempt and hospitalization in the middle of her involvement with Peggs. The victim has a history of mental health struggles that precede her encounters with Ragon and Peggs, but the abuse she suffered at their hands greatly aggravated her suffering and her need for intensive treatment. The victim's most acute distress coincides with her involvement with Raygon and Peggs. The victim testified that she is making progress with counseling. I am not persuaded by the government's estimate of the total cost of future necessary treatment. But I find it a reasonable, rough estimate that she will require moderately intensive treatment for at least four years. I accept the government's proffer on the annual costs for moderately intensive outpatient care: psychiatric care will cost $2,496 per year; future therapy will cost $9,568 per year. Over four years, future treatment will cost $48,256. Combined with past treatment costs of $8,107.93, the total cost of treatment through the next four years would be $56,363.93.

Attributing a specific portion of this expense specifically to the possession of the pornographic image that is the basis for the count of conviction would be impossible—the victim's abuse and degradation would not have been meaningfully lessened if Peggs had not possessed that image. But *Paroline* does not require strict but-for causation. Peggs's possession of this image was the basis of his criminal liability, so that conduct is not inconsequential. Mindful of *Paroline's* directive not to convert its suggested factors into a rigid formula that produces trivial restitution, I will ascribe approximately one-fourth of the victim's treatment costs to the count of conviction, rounding to the nearest thousand. This proportion recognizes both that Peggs is less culpable that Ragon, and that Peggs's other conduct is the primary source of harm to the victim. But it also provides that victim with meaningful restitution, tethered as

4

best I can to the causal role of the offense of conviction. I recognize also that this restitution comes nowhere close to providing full compensation for the victim's suffering. But full compensation, of the sort available in a civil case, is simply not available within the confines of criminal restitution.

Because the restitution ordered here is the amount ascribed to Peggs's conduct alone, Peggs's restitution obligation is not joint and several with Bryan Ragon.

## ORDER

IT IS ORDERED that:

1. Defendant Daniel Peggs is ordered to pay restitution in the amount of $14,000 payable immediately to Clerk of Court for the United States District Court for the Western District of Wisconsin, to be disbursed to the victim.

2. If Peggs does not have the financial resources to make full payment immediately, he is to make payments of $250 per month beginning within 30 days of his release from custody.

3. Peggs's restitution obligation is not joint and several with Bryan Ragon.

Entered April 21, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge